---

(118 App. Div. 170)

PERKINS v. UNDERHILL et al.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

1. BROKERS—ACTION FOR COMPENSATION—SUFFICIENCY OF EVIDENCE.

Evidence in an action for a broker's commission *held* insufficient to show that he did anything towards securing the attendance of the purchaser at the sale.

2. SAME—DUTY TO PRINCIPAL—COMMISSIONS FROM BOTH PARTIES.

Where a real estate broker appraised land and made an offer therefor for a prospective purchaser, he was bound to act in good faith toward his principal and to obtain the property at the lowest possible price, and their relationship was inconsistent with an arrangement with the seller for a commission on the amount the principal might pay at a public auction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 52–54.]

3. SAME—RIGHT TO COMPENSATION—SUFFICIENCY OF SERVICES.

Where a real estate broker claims compensation for securing the attendance of the purchaser at a public land sale, he must at least show that he had some effect upon the purchaser's attendance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 65, 69.]

Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by Robert R. Perkins against Jacob B. Underhill and others. From the judgment, defendant Underhill appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

Evan Shelby, for appellant.

John H. Mulcahey, for respondent.

INGRAHAM, J. The complaint alleges that the defendants, the executors under the last will and testament of one Elizabeth Aldrich, deceased, advertised for sale at public auction on October 25, 1905, certain real property upon Broadway in the city of New York, which was a portion of her estate; that the plaintiff was authorized by the Hamburg American Steamship Company to make an offer to the defendants to purchase it at private sale for $1,300,000, which offer the defendants declined; that defendants entered into an agreement with the plaintiff, wherein and whereby they agreed that, in consideration of his securing the attendance of the person who had made such offer as a bidder at the auction sale of the said property, and in the event of its being the highest and successful bidder at such sale, that the defendants would pay the plaintiff a sum equal to one-quarter of 1 per cent. of such bid; that the plaintiff duly performed all the conditions of said agreement on his part; that the said Hamburg American Steamship Company was the highest and successful bidder at such auction sale, said premises being struck off to them for $1,200,000; and plaintiff asks judgment against the defendants for $3,000.

The defendant Underhill answered, admitting that the defendants were executors under the last will and testament of Elizabeth W. Aldrich, deceased, and that the defendants advertised for sale at public auction on October 25, 1905, the premises mentioned in the complaint, but denied each and every other allegation contained therein. Upon the trial the plaintiff testified: That he was a real estate broker and was employed by a Mr. Sternfeld, representing the Hamburg American Steamship Company, to appraise this property on Broadway which had been offered for sale at auction by the defendants. That on October 24, 1905, plaintiff had a conversation with the defendant Underhill, and offered $1,300,000 for the property at private sale. That Underhill stated that he did not feel that the executors could accept any offer at private sale for the property, and that they would let it go to the advertised sale. That he appreciated the plaintiff's services in tendering the offer and said:

"You keep these parties in line, have them attend the sale, and if they are the successful bidders we will give you one-quarter of 1 per cent. commission."

That after the conversation the plaintiff reported to Mr. Sternfeld that defendants had refused the offer, and that there were two ways to proceed. That the plaintiff could attend the sale and bid for the property on behalf of the Hamburg American Company or it could allow some one else to bid at the sale. That in his judgment it would be better either for plaintiff not to appear at the sale at all and retain some one else to represent them there, or else that the plaintiff should appear at the sale and bid up to $1,300,000, and should then retire and allow some one else to take up the bidding at that point if it was necessary to go beyond that figure. That Mr. Sternfeld said he would talk the matter over with his client, Mr. Boas, and let the plaintiff know the following morning what they decided to do. That on the following morning the plaintiff again saw Mr. Sternfeld, and told him that he had talked the matter over with Mr. Boas and some other people connected with the Hamburg American Company, and they had decided that it would be judicious for the plaintiff not to appear and that they would have someone else bid at the sale. That at the conversation with Underhill reference was made to the difficulty of getting the people whom plaintiff represented to attend the sale, and Underhill then made the offer to pay plaintiff the commission; that the plaintiff then said:

"Well, I don't know as I can get my people to attend the sale. They will naturally be a little piqued in having this offer which they have made turned down, and it is possible that they won't come there at all, but I will see whether they will or not, I will do my best."

On cross-examination, the plaintiff testified that he had no interview with any of the executors except Underhill, and that he had no other conversation with the proposed purchasers except the conversation with Mr. Sternfeld to which he had testified. Plaintiff refused to tell Underhill the name of the person who made the offer, and did not disclose the fact that he had been employed by the person who made the offer and that he had appraised the property at $1,500,000. Plaintiff then introduced in evidence a letter dated October 25, 1905, which was sent by Sternfeld to the plaintiff after the latter's interview with Underhill, but before the sale, which stated that the reasons why it was impossible for the Hamburg American Company to request plaintiff's attendance at the sale had been fully stated to him. That "owing to my instructions, I am compelled to request you and to ask you not to be present, and leave to me entirely the matter of your compensation which will be within $150.00." Plaintiff further testified that he received as a gift from Mr. Sternfeld the $150 mentioned in this letter, and that he had called on the defendant Underhill after the sale and showed him the letter that he received from Sternfeld to which attention has been called.

Mr. Boas was then called as a witness for the plaintiff and testified: That he was the general manager of the Hamburg American Steamship Company and president of the Atlas Line Mail Steamers; these two companies being intimately connected with each other. That he attended the sale of this Broadway property on October 25th, and purchased the premises for $1,200,000. That he purchased it for the Hamburg American and Atlas Steamship Companies. That prior to

that time he had authorized Mr. Sternfeld as his agent to make an
offer at private sale of $1,300,000 for the same property, and subse-
quently ratified that authority to plaintiff. That prior to the sale he
had been told that the offer of $1,300,000 had been rejected. That the
witness subsequently assigned his purchase to the Atlas Line Steamship
Company, and title to the property was taken by that corporation. That
the witness had seen the advertisement of this property and had con-
sidered purchasing it before he heard from or saw the plaintiff. That
the director general of the Hamburg American Company was present
about a week before the sale, when the witness had seen the plaintiff,
and Mr. Sternfeld, which was before he had made the offer, and re-
ceived the plaintiff's appraisal of the property at $1,500,000, and that
that statement had influenced him in making the offer of $1,300,000.
That he subsequently authorized Sternfeld to bid as high as $1,500,000
for the property. That while the plaintiff's statement had an influence
in determining the amount to which he would bid, he did not rely en-
tirely upon plaintiff's valuation in determining that amount. That it
was his purpose in purchasing this property, if he could get it at what
he considered a reasonable figure, he would purchase it at private sale,
and, failing in that, to purchase it at the auction. Plaintiff having
rested, the complaint was dismissed as to all of the defendants except
Underhill; the court denying the motion to dismiss as to him. The
defendant Underhill moved to dismiss the complaint, on the ground
that Mr. Boas had made up his mind to purchase the property; that
he made the offer through the plaintiff, which was not accepted, and
that Mr. Boas had then determined to buy the property at the sale;
that the plaintiff had received $150 from the Hamburg American Com-
pany as compensation for his services, and he could not recover two
commissions for the same service from different parties to the trans-
action. This motion was denied, upon the ground that there was a
question of fact for the jury, to which defendant excepted.

Underhill was then called as a witness, and testified: That the plain-
tiff made him an offer of $1,300,000 for the property, but refused to
tell him the name of his customer. That the offer was refused; and
the witness stated to the plaintiff that if his customer wished to pur-
chase the property they could come to the auction and bid. That plain-
tiff then stated that his customer would not come to the auction. Wit-
ness then asked the plaintiff if he could persuade his people to come to
the auction, to which the plaintiff responded that he did not know;
that the witness then said:

"If you can persuade them to go to the auction and they are the successful
bidders, and they buy the property, and at the time they buy the property
they hand the auctioneer your card, I will give you a quarter of one per cent."

That the plaintiff then said:

"Suppose I should bid for the property myself, wouldn't that be very good
evidence?"

To which witness said:

"That would be just as good."

Mr. Underhill's statement of the conversation was corroborated
by Mr. Kennelly, who had represented him as a real estate broker in

the transaction. At the end of the whole case, the defendant again moved to dismiss the complaint, which motion was denied. The court submitted the case to the jury, instructing them that unless they were satisfied that through the efforts made by the plaintiff after the 24th day of October, 1905, the attendance of the successful bidder was secured, he could not succeed; that if after the agreement made on October 24th, the plaintiff did in fact secure such attendance of the successful bidder at the sale, he performed his contract in so far as his services or efforts were necessary to the earning of compensation. The jury found a verdict for the plaintiff. The defendant made a motion for a new trial upon the ground, among others, that the verdict was against the weight of evidence, and the defendant has appealed from the judgment and the order denying the motion for a new trial.

The question whether there was evidence to sustain a finding that the plaintiff secured the attendance at the sale of the person who had made the offer of $1,300,000, and who became the purchaser of the property is therefore presented. The evidence is undisputed that before the plaintiff had any connection with this transaction, Mr. Boas, as the agent of the Hamburg American and its allied company, had determined to purchase this property if it could be secured at what he considered a reasonable price; that the plaintiff was employed by Mr. Boas, through his agent, to appraise the property, and reported to Mr. Boas that it was worth $1,500,000; that Mr. Boas determined to make an offer of $1,300,000 for the property at private sale and, if that offer was declined, to purchase the property at the sale if it could be secured for $1,500,000; that he then authorized the plaintiff to make the offer of $1,500,000, and when that offer was rejected, Mr. Boas terminated plaintiff's connection with the transaction, paid him for the services that he had rendered, and personally undertook and completed the purchase of the property.

As I view this transaction, there was no evidence that this plaintiff secured or had any relation to securing the presence of Mr. Boas at the sale, or performed any service in that respect which entitled him to compensation. It is not even claimed by the plaintiff that he first called Mr. Boas' attention to this property, or that Mr. Boas was his customer; and the evidence is uncontradicted that prior to the plaintiff's connection with the property there had been negotiations between Mr. Boas and the executors in relation thereto, through Mr. Merriam and Mr. Sternfeld, who were both connected with Messrs. Alexander & Green, a firm of attorneys in this city. Under this employment, plaintiff's duty was primarily to Mr. Boas. He was bound to act in good faith towards him, and endeavor to obtain the property for the lowest possible price. The relation that existed was entirely inconsistent with his representing the defendant in relation to the sale of the property; for, as representative of the defendant, it was his duty to obtain for him the best price possible. He could not consistently represent both. Plaintiff carefully concealed from the defendant his relation to the purchaser, refusing to disclose his name. After the offer made by the plaintiff on behalf of the Hamburg American Company was rejected, all that the plaintiff did was to see Mr. Sternfeld, the agent of Mr. Boas, and make an obvious suggestion that if Mr. Boas wanted to

buy the property he could either employ plaintiff. to attend the sale and bid, or he could send some one else to the sale for that purpose. There was here no solicitation or inducement to Mr. Boas to attend the sale, and nothing that he said to this agent could in any way influence Mr. Boas in relation to a subsequent purchase of the property, and the evidence is clear that nothing the plaintiff did had any effect upon Mr. Boas or the Hamburg American Company or anybody else in relation to the purchase of the property at the auction sale. Mr. Boas, who was called by the plaintiff, expressly testified that before he made the offer he had resolved to purchase the property if it could be secured for $1,500,000. The court, in its charge to the jury, held as a matter of law that the evidence must establish to the satisfaction of the jury that "through the efforts made by him [plaintiff] after the 24th day of October, 1905, the attendance of the successful bidder was secured," before the plaintiff could recover. The evidence is conclusive that the plaintiff made no efforts to procure the attendance of Mr. Boas at the sale, and that nothing that he did had any effect upon the attendance at the sale or the purchase of the property. The contract as testified to by the plaintiff contemplated the rendition of services by him, and it was for the services to be rendered by him that he was to be paid. The promise was based upon the statement of the plaintiff that he did not know whether he could get his people to attend the sale. It was upon his promise to see whether they would attend the sale, and to do his best to induce them to attend, that the promise of the defendant was made. To entitle him to recover the compensation agreed to be paid for the rendition of such services, he must at least show that he did something, and that what he did has some relation to or effect upon the attendance of the person who made the offer at the sale and his purchase of the property. In the absence of any attempt by the plaintiff to induce Mr. Boas to attend the sale or to purchase the property, he performed no service which entitled him to compensation.

It follows, therefore, that the verdict was not sustained by the evidence, and that the judgment and order are reversed, and a new trial ordered, with costs to appellant to abide the event.

PATTERSON, P. J., and McLAUGHLIN and CLARKE, JJ., concur. SCOTT, J., dissents.